UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK HOIDAS, individually and on behalf of a class, ) ) ) Plaintiff, ) ) vs. ) ) MIDLAND FUNDING, LLC; MIDLAND ) CREDIT MANAGEMENT, INC., and ) ENCORE CAPITAL GROUP, INC., ) ) Defendants. ) | Case No. <br><br> <u>Jury Demanded</u> |

**CLASS AND INDIVIDUAL COMPLAINT**

Plaintiff, Nick Hoidas, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA), and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

**STANDING**

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Defendants' failure to report to a credit reporting agency that the debt is disputed creates a "real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018).

1

## PARTIES

5.      Plaintiff, Nick Hoidas ("Plaintiff"), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Synchrony Bank consumer credit account. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

6.      Defendant, Midland Funding LLC ("Midland"), is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It does or transacts business in Illinois. Its registered agent is Midland Credit Management, Inc., 1821 Walden Office Sq., Suite 400, Schaumburg, IL 60173.

7.      Midland holds a collection agency license from the state of Illinois.

8.      Midland owns portfolios of consumer receivables, which it attempts to collect.

9.      Midland attempts to collect the consumer receivables it owns via litigation, collection letters and credit reporting.

10.     Midland's principal purpose is the collection of defaulted consumer debts that it owns, via interstate commerce.

11.     Midland is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

12.     Defendant, Midland Credit Management ("MCM"), is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois. Its registered agent is Illinois Corporation Service Co., located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.     MCM is a collection agency that attempts to collect debts held in the name of Midland Funding, LLC.

14. MCM holds a collection agency license from the State of Illinois.

15. MCM regularly collects or attempts to collect defaulted consumer debts due or asserted to be due to Midland, and is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

16. MCM causes a majority of the debts it attempts to collect on behalf of Midland to be reported to the TransUnion, Equifax and Experian credit reporting agencies.

17. Encore Capital Group, Inc. ("Encore") is a Delaware Corporation. It does not maintain a registered agent in Illinois. Its registered agent and office is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

18. Encore Capital Group, Inc. ("Encore") is a purchaser of defaulted debts which it collects from consumers through other companies, such as Asset.

19. Encore maintains a website, www.encorecapital.com, wherein it reads in part as follows:

> Across all our businesses, we seek to treat each and every consumer fairly. All of our 7,900+ employees take great pride in our consumer-centric approach to helping resolve past-due debt obligations, which empowers the consumer to gain financial well-being. By listening to and understanding each individual situation, we are able to offer our consumers affordable and sustainable payment solutions, individualized to meet their needs. https://www.encorecapital.com/businesses-and-services/

20. Encore's Form 10Q Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, incorporated by reference herein, provides in part as follows:

> Our Business

> We are an international specialty finance company providing debt recovery solutions and other related services for consumers across a broad range of financial assets. We primarily purchase portfolios of defaulted consumer receivables at deep discounts to face value and manage them by working with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks, credit unions, consumer finance companies and commercial retailers. Defaulted receivables may also include receivables subject to bankruptcy proceedings. We also provide debt servicing and other portfolio management services to credit originators for non-performing loans. See https://encorecapital.gcs-web.com/static-files/76272cc9-10de-4101-88dc-35ab0825ac9e, Accessed on September 5, 2019.

21. Encore's primary purpose is the collection of debt as it derives a majority of its revenue from the collection of defaulted consumer receivables and it is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

22. According to Defendants, Plaintiff "utilized a certain open end consumer credit card account and/or line of credit, issued by SYNCHRONY BANK, bearing an account number XXXXXXXXXXXX-3045". (Exhibit A, State Court Complaint and Summons).

23. Plaintiff incurred the alleged debt for goods and services used for personal purposes, charged to said SYNCHRONY BANK consumer credit account ending with the numbers 3045 ("alleged debt").

24. The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

25. Due to his financial circumstances, Plaintiff could not pay the alleged debt, and the alleged debt went into default.

26. Midland subsequently alleged to have purchased the alleged debt and retained MCM to assist in collecting the alleged debt from Plaintiff.

27. On September 27, 2016, Midland filed a complaint in the Circuit Court of Cook County, Illinois to collect the alleged debt, titled *Midland Funding LLC v. Nick Hoidas*, Case No. 2016-M5-005505 "State Action". (Exhibit A, State Court Complaint and Summons).

28. The State Action complaint was signed by "Kevin W. Mortell/Toni Miller", which were each Midland's in-house counsel at the time.

29. The State Action complaint was thereafter alleged, by Defendant Midland, to have been served on Plaintiff and/or a member of his household.

30. In response to collection attempts by Defendants, Plaintiff consulted with an attorney at The Law Office of M. Kris Kasalo, Ltd..

31. On April 7, 2017, Plaintiff's attorney sent an email to Midland's counsel Kevin Mortell stating in part that "my client denies owing the debt". (Exhibit B, Dispute Email).

32. Kevin Mortell received the email attached as Exhibit B on April 7, 2017.

33. On April 7, 2017, an attorney at The Law Office of M. Kris Kasalo, Ltd. also sent an email to Midland's counsel Toni Schroeckenstein stating in part that "my client denies owing the debt". (Exhibit C, Dispute Email).

34. Toni Schroeckenstein received the email attached as Exhibit C on April 7, 2017.

35. Toni Schroeckenstein is now known as Toni Miller.

36. Midland received notice of Plaintiff's dispute on April 7, 2017.

5

37. On August 20, 2018, a judgment was entered against Plaintiff in the State Action in the amount of $4,940.79 plus $550.04 in costs. (Exhibit D, Order).

38. Plaintiff was not aware that a judgment was entered against him until he was served with a Citation to Discover Assets ("Citation"), on or around August 13, 2019. (Exhibit E, Citation).

39. Plaintiff thereafter obtained a copy of his Equifax consumer credit report, and paid money both to obtain the report and also to deliver the report to his attorney.

40. Upon reviewing his Equifax credit report, Plaintiff became aware that MCM was reporting a tradeline on behalf of Midland in connection with the alleged debt.

41. On March 2016 and thereafter, MCM, on behalf of Midland, communicated credit information regarding the alleged debt to the Equifax consumer reporting agency on a monthly basis, including a balance and an account number. (Exhibit F, Redacted Excerpt from Plaintiff's Equifax Credit Report).

42. MCM, on behalf of Midland, communicated balance information to the Equifax credit reporting agency, regarding the alleged debt, on a monthly basis since March 2016, to the date of the filing of this Complaint.

43. MCM and Midland were aware of Plaintiff's dispute of the alleged debt, yet failed to communicate that Plaintiff's alleged debt was disputed when MCM communicated, on an ongoing monthly basis after Plaintiff's dispute was communicated in April, 2017, *other* credit information to Equifax regarding the alleged debt.

44. MCM failed to communicate, to Equifax, that the alleged debt was disputed, on at least 24 occasions from the time Plaintiff communicated his dispute to Midland, to the present.

45. Midland and MCM had been notified of Plaintiff's dispute in April 2017, yet had continued communicating to the Equifax credit reporting agency that the alleged debt was not disputed, for over two years after Midland was notified that Plaintiff disputed that he owed the alleged debt.

46. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

47. MCM, on behalf of Midland, failed to communicate a dispute to the Equifax credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute, though it communicated other credit information regarding the alleged debt to the Equifax credit reporting agency.

48. Credit reporting by a debt collector constitutes an attempt to collect a debt. *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

49. Defendants materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute on his credit report, by failing to inform Equifax of the fact of the dispute.

50. Specifically, Plaintiff suffered a concrete injury and real risk of harm to his reputation as a result of Defendant MCM's sharing of false information regarding the alleged

debt, with a third party. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018).

51. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

52. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
> **…**
> **(2) The false representation of—**
> **(A) the character, amount, or legal status of any debt;**
> **…**

53. The Citation served upon Plaintiff in July, 2019 stated that the sum of $6,006.50 was "now due" to Midland. (Exhibit E, Citation).

54. The tradeline reported for the alleged debt, on Plaintiff's Equifax report, indicates that Plaintiff owes a "Balance" of $4,941.00 to Midland as of July, 2019. (Exhibit F, Redacted Excerpt from Plaintiff's Equifax Credit Report).

55. Both amounts cannot be correct, and at least one amount is wrong, as Plaintiff cannot owe two separate amounts for the same debt, at the same time.

56. Defendants' misrepresentation of the amount of the alleged debt is material, as the disparity reflects an over $1000 difference in the amount of the alleged debt in July 2019.

57. Upon reading his credit report, Plaintiff was under the impression that he owed $4,941.00 to Midland as of July, 2019.

58. Had Plaintiff paid the amount of $4,941.00 to Midland, we would still have owed over a thousand dollars to Midland, unbeknownst to him, according to the information in the Citation.

59. Plaintiff could have decided to pay the lower amount, only to later discover that he still owed money toward the alleged debt—even though the credit report indicated that $4,941.00 was the full "Balance" of the debt.

60. Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter are material. *Boucher v. Fin. Sys. of Green Bay, Inc.*, No. 17-2308, 2018 WL 443885, at *2 (7th Cir. Jan. 17, 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009)).

61. Here, Defendants' misrepresentation that the amount of the alleged debt is not increasing would likely induce Plaintiff and an unsophisticated consumer to either: delay in paying a debt in reliance on the representation that the amount reported is fixed (and pay other debts first, that are not fixed), or pay the debt amount reported only to find out later that the amount being credit reported is less than the amount owed, and that further money is thus owed on a given debt.

62. An unsophisticated consumer could have reasonably relied on the amount being reported on his Equifax credit report as being the full "Balance", when in fact, the balance was much higher than what Midland indicated, since Midland omitted interest, fees and costs from the total "Balance" reported to Equifax.

63. Thus, by communicating only the principal balance to Equifax as the full "Balance", Defendants misrepresented the amount of the alleged debt, which is higher than the

9

amount reported by Defendants by MCM, through Equifax, in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(8).

64. The balance of the alleged debt that MCM communicated to the Equifax credit reporting agency, on at least 24 separate occasions, was thus false.

65. Midland bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

66. Encore bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Midland and MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

67. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

**COUNT I- FAIR DEBT COLLECTION PRACTICES ACT--INDIVIDUAL**

68. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

69. MCM failed to communicate a dispute to the Equifax credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other credit information regarding the alleged debt to Equifax.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in Plaintiff's favor and against Defendants as follows:

    A.    Statutory and actual damages pursuant to 15 U.S.C. § 1692k(a);

    B.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    C.    Such other or further relief as the Court deems proper.

## COUNT II—FAIR DEBT COLLECTION PRACTICES ACT—CLASS COUNT

70. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

71. Defendants violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(8) by misrepresenting the amount of the alleged debt in the information it communicated to the Equifax credit reporting agency.

72. Plaintiff brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendants attempted to collect a charged off consumer debt that has been reduced to judgment (3) by causing said debt to be reported monthly to the Equifax credit reporting agency (4) where interest, costs and/or fees are regularly increasing the balance of the debt that is owed, but (5) where MCM is not including interest, costs, and/or fees in the balances that it communicates to the Equifax credit reporting agency (6) during the period that begins on September 16, 2018 and ends on September 16, 2019.

73. As Defendants' policies regarding credit reporting are likely applicable to all judgment debtors from which Defendants seek to collect judgments by credit reporting and via post-judgment collection actions, the Class likely consists of more than 40 persons from whom Defendants attempted to collect a judgment by underreporting the balance of the judgment debt.

74. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

75. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

76. The prosecution of separate actions by individual members of the Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class, and would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

77. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof.

78. Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

79. Midland bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

80. Encore bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Midland and MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

81. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's and the class' favor and against Defendants as follows:

    A.    Statutory damages for the class, pursuant to 15 U.S.C. §1692k(a)(2), and an incentive award for Plaintiff, if applicable;

    B.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

    C.    Such other or further relief as the Court deems proper.

By:/s/ *Mario Kris Kasalo*
Mario Kris Kasalo
THE LAW OFFICE OF M. KRIS KASALO, LTD.
20 North Clark Street, Suite 3100
Chicago, IL 60602
(312) 726-6160 (TELE)
(312) 698-5054 (FAX)
Mario.kasalo@kasalolaw.com

## JURY DEMAND

Plaintiff, individually and on behalf of a class, demands a trial by jury.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo